GUY, Appellant,

v.

CITY OF STEUBENVILLE, Appellee.

Court of Appeals of Ohio,
Seventh District, Jefferson County.

No. 99 JE 47.

Decided Feb. 28, 2002.

Calhoun, Kademenos & Heichel and Marian D. Davidson, for appellant David A. Guy, Sr.

Betty D. Montgomery, Attorney General, and Charlett Bundy, Assistant Attorney General, for appellee Administrator, OBES.

S. Gary Repella, Law Director, for appellee city of Steubenville.

WAITE, Judge.

{¶ 1} This timely appeal arises from an administrative appeal wherein the trial court affirmed the decision of the Unemployment Compensation Board of Review ("board of review") to deny appellant unemployment benefits. For the following reasons, we affirm the judgment of the trial court.

{¶ 2} David Guy ("appellant") was employed as a Steubenville police officer from November 30, 1988, until his discharge on August 12, 1998.

{¶ 3} As a result of a federal lawsuit alleging police misconduct, the city of Steubenville ("the city") entered into a consent decree ("the decree") with the United States. Section 66 of the decree requires the city to: "* * * identify for review by senior supervisors, all officers with three or more complaints of misconduct or other [internal affairs] referrals within three years, whether or not the disposition of the investigation was 'sustained.' Such review shall result, where appropriate, in supervisory meetings with the officer, retraining, counseling, assignment to a [Field Training Officer], transfer, or reassignment. The city's supervisory response shall address the types of misconduct alleged."

{¶ 4} Section 70 of the decree provides:

{¶ 5} "The City shall maintain records documenting all mandatory counseling of officers. At a minimum, these records shall reflect the name of the officer, the reasons for the referral, * * * the general subject matter of the mandatory counseling, and whether the mandatory counseling sessions were attended."

{¶ 6} Section 81 of the decree provides:

{¶ 7} "The City shall contract for or provide an employee assistance program ('EAP'). This program shall at a minimum provide counseling and stress management services to officers. The program shall be staffed by sufficient licensed and certified counselors who are trained and experienced in addressing psychological and emotional problems common to police officers. The city shall publicize the availability of these services to all officers. Except when the city imposes mandatory counseling as a supervisory tool, officers shall be free to attend counseling confidentially, and without any adverse actions taken against them. The city shall refer officers to EAP counseling where the city believes an officer's job performance may benefit from EAP services."

{¶ 8} Appellant had three Internal Affairs ("IA") complaints filed against him within three years. Consequently, pursuant to Section 66 of the decree, appellant was ordered to attend mandatory counseling. Appellant attended a session with a licensed social worker/counselor. The counselor attempted to secure appellant's authorization to release information regarding the session to appellant's supervisor. Appellant consented to the release only of the mere fact of his

attendance. He refused to release any other information as to the mandatory counseling, even after being advised that it was required. The city considered appellant's failure to permit disclosure of the subject matter of the counseling session to be insubordination as well as a violation of the decree. The city discharged appellant on August 12, 1998.

{¶ 9} Appellant had previously filed an application for determination of unemployment benefit rights on December 11, 1997, with the Ohio Bureau of Employment Services ("OBES") regarding an earlier disciplinary layoff. On August 13, 1998, appellant filed a claim application regarding the discharge at issue here. On August 28, 1998, OBES determined that appellant's discharge was justified and disallowed his claim. The following day, appellant filed a request for reconsideration. OBES affirmed its prior decision on September 14, 1998.

{¶ 10} Appellant timely appealed the decision on reconsideration to the board of review, which held a hearing on the matter in mid-December. In a decision dated February 3, 1999, the hearing officer determined that appellant was discharged for just cause and affirmed OBES's decision. On April 11, 1999, the board of review disallowed appellant's application for further appeal to the board of review.

{¶ 11} On April 23, 1999, appellant appealed to the Jefferson County Court of Common Pleas pursuant to R.C. § 4141.28(N). The trial court held a hearing on the matter, and the following day, September 21, 1999, the trial court filed a journal entry affirming the decision of the board of review. Appellant filed his notice of appeal to this court on October 14, 1999.

{¶ 12} Appellant's sole assignment of error asserts:

{¶ 13} "The trial court erred in upholding that the appellee fired appellant, David Guy, with just cause in connection with work, as the appellant had not engaged in a pattern of insubordination."

{¶ 14} Appellant asserts two subassignments of error, the first of which states:

{¶ 15} "The trial court erred in upholding that the appellant had engaged in a pattern of insubordination."

{¶ 16} Appellant acknowledges that an individual is not entitled to unemployment benefits if he is terminated for just cause. See R.C. 4121.29(D)(2). Appellant insists that he was not terminated for just cause.

{¶ 17} Appellant argues that an employer may not consider the past conduct of an employee to determine whether a present violation occurred. He claims that an employer may consider only past conduct in making a determination as to

the discipline to be meted out once a present violation has been established. In support, appellant cites *Arcuragi v. Miami Univ.* (1995), 103 Ohio App.3d 455, 659 N.E.2d 869. Appellant contends that in the present case, OBES and the board of review erroneously considered a past instance of alleged misconduct in determining that appellant engaged in a pattern of insubordination. That incident, according to appellant, was his refusal to sign and acknowledge his understanding of the consent decree. Appellant contends that this prior incident was irrelevant to the event that led to his termination and should not have been considered by the administrative tribunals or the trial court.

{¶ 18} Appellant's second subassignment of error states:

{¶ 19} "The trial court erred in upholding that the consent decree implicitly required the appellee [sic] to release all medical information and in finding that the appellee [sic] did not release enough information to comply with the consent decree."

{¶ 20} Appellant essentially argues here that the provisions of the decree did not require him to waive the confidentiality of his counseling sessions. First, appellant claims that Section 66(b) cannot be interpreted as requiring a complete waiver of the confidential nature of his counseling session. Appellant points out that, at the board of review hearing, the city's law director testified that Section 66(b) does not state on its face that all information from the counseling session must be released.

{¶ 21} Appellant next addresses Section 70 of the decree and, more specifically, its requirement that the city maintain records of mandatory counseling sessions. Appellant argues that it is "wholly implausible" for the city to claim that appellant thwarted the city's record keeping obligation as the city had no record-keeping system in place. Appellant maintains that he provided all of the information required by Section 70. He states that it is uncontroverted that he attended the mandatory session and that the city, having mandated the session, knew that the general subject of the session was the three civilian complaints filed against him.

{¶ 22} Appellant also contends that the trial court's decision to affirm the administrative decisions was erroneously based on its own interpretation of the decree. Appellant avers that the scope of a consent decree must be determined on its face and that implicit translations and interpretations are not permitted. *Firefighters Local Union No. 1784 v. Stotts* (1984), 467 U.S. 561, 575, 104 S.Ct. 2576, 81 L.Ed.2d 483. Based on the record herein, appellant's assignment of error lacks merit.

{¶ 23} In an administrative appeal, a reviewing court may reverse the board of review's "just cause" determination only if it is unlawful, unreasonable,

or against the manifest weight of the evidence. *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.* (1995), 73 Ohio St.3d 694, 696–697, 653 N.E.2d 1207. What constitutes just cause for termination is a question of fact, and determination of purely factual questions is primarily within the province of the board of review. *Irvine v. Unemp. Comp. Bd. of Review* (1985), 19 Ohio St.3d 15, 17, 19 OBR 12, 482 N.E.2d 587. The fact that reasonable minds might reach different conclusions is not a basis for the reversal of the board's decision. Id. at 18, 19 OBR 12, 482 N.E.2d 587.

{¶ 24} While it is true that, in an administrative appeal, reviewing courts are not permitted to make factual findings or to determine the credibility of witnesses, they do have the duty to determine whether the board's decision is supported by evidence in the record. Id. As this court recently noted, in unemployment cases, an appellate court will not review a common pleas court's decision under an abuse-of-discretion standard, but, rather, will review the decision of the board of review using the same standard used by the common pleas court. *Laukert v. Ohio Valley Hosp. Assn.* (1996), 115 Ohio App.3d 168, 171–172, 684 N.E.2d 1281. In addition, the board of review's final decision may not be reversed as against the manifest weight of the evidence if it is supported by some evidence in the record. *Binger v. Whirlpool Corp.* (1996), 110 Ohio App.3d 583, 589, 674 N.E.2d 1232. Where the board of review might reasonably decide either way, the courts have no authority to upset that decision. *Irvine,* supra, at 18, 19 OBR 12, 482 N.E.2d 587.

{¶ 25} According to R.C. 4141.29(D)(2)(a), an individual is not eligible for unemployment benefits if he has been discharged for just cause in connection with his work. "Traditionally, just cause, in a statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." *Tzangas,* supra, at 697, 653 N.E.2d 1207. Moreover, a "just cause" determination must be consistent with the purpose of the Unemployment Compensation Act. Id.

{¶ 26} " 'The [A]ct was intended to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault or agreement of his own.' * * *

{¶ 27} "The Act does not exist to protect employees from themselves, but to protect them from economic forces over which they have no control. When an employee is at fault, he is no longer the victim of fortune's whims, but is instead directly responsible for his own predicament. Fault on the employee's part separates him from the Act's intent and the Act's protection. Thus, fault is essential to the unique chemistry of a just cause termination.

{¶ 28} "While this court did hold * * * that '[t]he determination of whether just cause exists necessarily depends upon the unique factual considerations of the particular case,' * * * that does not compel the appellate court's abandonment of fault-based just cause analysis in favor of a 'totality of the circumstances' examination. Instead, * * * the question of fault cannot be rigidly defined, but, rather, can only be evaluated upon consideration of the particular facts of each case. If an employer has been reasonable in finding fault on behalf of an employee, then the employer may terminate the employee with just cause. Fault on behalf of the employee remains an essential component of a just cause termination." (Citations omitted.) *Tzangas* at 697–698, 653 N.E.2d 1207.

{¶ 29} Appellant's argument that OBES and the board of review improperly considered evidence of his past disciplinary actions is unpersuasive. First, the *Arcuragi* case cited by appellant involved an administrative appeal of the disciplinary action taken against a state worker and not an appeal as to whether that worker should receive unemployment benefits. Despite appellant's protestations to the contrary, the two proceedings are completely separate and distinct, and a ruling in the disciplinary appeal is not binding on the OBES in determining unemployment benefits. *Adams v. Harding Mach. Co., Inc.* (1989), 56 Ohio App.3d 150, 154–155, 565 N.E.2d 858. An employee terminated for "just cause" pursuant to a labor contract could theoretically secure unemployment benefits, because the "just cause" sufficient to uphold the discharge of that employee need not be as grave as the "just cause" required to disqualify that discharged employee from receiving unemployment compensation under R.C. 4141.29. *Youghiogheny & Ohio Coal Co. v. Oszust* (1986), 23 Ohio St.3d 39, 42, 23 OBR 57, 491 N.E.2d 298.

{¶ 30} Second, *Arcuragi* does not stand for the proposition advanced by appellant. *Arcuragi* held that "prior misconduct was clearly material in determining the appropriate punishment for the most recent incidents of failure of good behavior." *Arcuragi*, 103 Ohio App.3d at 459, 659 N.E.2d 869.

{¶ 31} Third, in unemployment compensation proceedings, the OBES and the board of review are not bound by the rigid formality of the technical rules of evidence. R.C. § 4141.28 controls the procedure that must be followed when an individual files for unemployment compensation benefits. Subdivision (J) of this section provides:

{¶ 32} "In the conduct of a hearing * * * the hearing officers are not bound by common law or statutory rules of evidence or by technical or formal rules of procedure. The hearing officers shall take any steps in the hearings, consistent with the impartial discharge of their duties, which appear reasonable and

necessary to ascertain the facts and determine whether the claimant is entitled to benefits under the law."

{¶ 33} R.C. 4141.28(J) allows the OBES and board of review to admit, analyze, consider, and weigh any evidence considered necessary to make their determinations. *Simon v. Lake Geauga Printing Co.* (1982), 69 Ohio St.2d 41, 43, 23 O.O.3d 57, 430 N.E.2d 468.

{¶ 34} In the matter before us, the record contains evidence that appellant was at fault for his termination. The decree between the city and the federal government addresses an alleged pattern of corrupt police activity and seeks to remedy the situation by implementing and maintaining good practices and procedures for police management. Decree Sections 1–3. As noted, the decree provides that the city shall identify officers with three or more civilian complaints against them within a three-year period. Decree Section 66(b). The city is also required to take appropriate supervisory measures that may include mandatory counseling sessions for those employees. Decree Section 66(b). The decree also requires the city to maintain records of the mandatory counseling sessions, including the reasons for the referral and the general subject matter of the counseling. Decree Section 70. Moreover, the decree indicates that mandatory counseling is not confidential under the circumstances in which appellant attended his counseling session. Section 81 provides in part that "[e]xcept when the city imposes mandatory counseling as a supervisory tool, officers shall be free to attend counseling confidentially * * *." Appellant attended mandatory counseling. Thus, under Section 81, that counseling was not protected by the rules of confidentiality.

{¶ 35} The record reflects that appellant was the subject of three civilian complaints between July 1997 and December 1997. Appellant was ordered to attend mandatory counseling. Following the mandatory counseling session, appellant authorized the release only of information confirming his attendance. The record also indicates that appellant "* * * was informed that in the case of mandatory counseling, communication with a supervisory designee making the referral was indicated and expected with his written authorization." The record contains the statement, "With this condition understood [appellant] elected to authorize only for the disclosure of his attendance in the counseling session and expressly declined any further disclosure."

{¶ 36} There is evidence that appellant was notified of and understood the requirement that he disclose to his superiors certain details of the subject matter of his counseling. There is evidence that he knew he needed to sign a waiver form to release that information. There is evidence of appellant's prior disciplinary actions that led to the order that he attend counseling. There is evidence

that appellant knew he could be fired for failure to comply with the decree. There is evidence that appellant was familiar with the decree and its requirements. Therefore, there is certainly some evidence of record that appellant was at fault for his termination and that appellee was justified in terminating his employment. Accordingly, we overrule appellant's assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

VUKOVICH, P.J., and DEGENARO, J., concur.