CITY OF STRUTHERS, Appellee,

v.

MORELL, Appellant.

[Cite as Struthers v. Morell, 164 Ohio App.3d 709, 2005-Ohio-6594.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 05 MA 24.

Decided Dec. 8, 2005.

Carol Clemente Wagner, City of Struthers Law Director, for appellee.

Timothy Piatt and Barry Laine, for appellant.

Vukovich, Judge.

{¶ 1} Appellant, Tina Morell, appeals the decision of the Mahoning County Common Pleas Court that ruled that she had been discharged by the city of Struthers with just cause for purposes of unemployment compensation. This decision reversed the decision of the Unemployment Compensation Review Commission, which found that she had been discharged without just cause. The main issue is whether the trial court improperly substituted its judgment for that of the commission when it held that the mayor, who had verbally warned an employee that she would be fired if she ran in a city election, had just cause to terminate the employee after she ran for office. For the following reasons, this court reverses the trial court's vacation of the commission's decision and determines that there was some evidence to support the commission's decision that just cause was lacking when there was no established policy on the matter of mayoral appointees running for city office.

### STATEMENT OF THE CASE

{¶ 2} Appellant was an at-will, unclassified employee of the city of Struthers who served at the mayor's discretion. She had been employed in this capacity for nearly 12 years, mostly as deputy tax commissioner. In 1999, appellant debated seeking a vacant seat on city council, a part-time position. When she discussed this possibility with the mayor, he advised that it would constitute a conflict of interest to work in both capacities at once. She thus discarded the city council idea.

{¶ 3} In early 2003, appellant informed the mayor that she wished to run against the incumbent city auditor, which was a full-time position, meaning she would relinquish her tax position. Testimony conflicted on whether the mayor then instructed her that this was against his policy, but the mayor testified that he warned her she would be terminated if she ran.

{¶ 4} Appellant ran for the position of city auditor. The mayor testified that he felt that discharging her before the primary would work to her advantage in the election. Thus, he did not immediately terminate her. She won the primary, effectively winning the election, as there were no other declared candidates. On May 8, 2003, the mayor advised appellant by letter that she was terminated.

{¶ 5} Appellant then filed for unemployment compensation benefits. On June 3, 2003, the Ohio Department of Job and Family Services ("ODJFS") ruled that appellant had been discharged for just cause. On July 11, 2003, the director affirmed the ruling. This decision was appealed, and jurisdiction was transferred to the Unemployment Compensation Review Commission. A hearing was held before a hearing officer. On October 7, 2003, the hearing officer upheld the

determination that appellant had been terminated with just cause. The commission then allowed her appeal without further hearing.

{¶ 6} On April 20, 2004, the commission reversed the hearing officer's decision and found that appellant had been discharged *without* just cause. The commission found that the mayor had told appellant that her running for auditor would compromise his ability to work with the incumbent auditor, whom he supported. The commission also resolved the conflicting testimony by believing the mayor's claim that he had told appellant she would be fired if she ran in the primary.

{¶ 7} However, the commission then found that although the mayor maintains that he had a policy prohibiting his political appointees from running for an elected office within the city, the policy is not set forth in writing, and there is no showing that he communicated it to all appointees. The commission concluded that the evidence is not sufficient to demonstrate that the city had a uniform, established policy prohibiting appointees from running for elected office. The commission concluded that although the mayor could terminate appellant at any time without consequence, in order to deny unemployment benefits, there must be sufficient fault, wrongdoing, or misconduct constituting just cause for termination.

{¶ 8} The city appealed to the trial court, and opposing briefs were submitted by the city and ODJFS. On November 19, 2004, a trial court magistrate stated that he took no issue with the purely factual findings of the commission. However, it appears that the magistrate found the fact that the mayor had told appellant she would be fired if she ran to be more important than the commission did. The magistrate also focused on the fact that the mayor had advised her that running against the incumbent would compromise his ability to work with the incumbent. The magistrate determined that appellant's act of running for office, after being specifically advised that she would be fired if she did, constituted a direct disobeyance of a directive and an unreasonable disregard for the city's best interests. The magistrate concluded that this disobedience was a justifiable reason for her termination. Thus, the magistrate opined that the commission's decision was unlawful, unreasonable, and against the manifest weight of the evidence.

{¶ 9} Appellant filed timely objections to the magistrate's decision. On January 14, 2005, the trial court adopted the magistrate's decision and agreed that the commission's decision was unlawful, unreasonable, and against the manifest weight of the evidence. The court found that appellant had chosen to run, knowing she would be fired, and thus her firing was her fault. The court concluded that there was just cause for her termination. The court thus reversed and vacated the decision of the commission.

{¶ 10} Appellant filed a timely notice of appeal to this court. The city's brief was originally untimely filed and in an improper format. The city then refiled the same brief. We allowed the late submission but asked the city to file a proper brief. Finally, the city filed a third brief. Although the city had added a table of contents, statement of facts, statement of the case, and conclusion, it had still failed to provide a table of authorities. See App.R. 16(A)(2) (requiring a table of cases alphabetically arranged, statutes, and other authorities cited, with references to the pages of the brief where cited). See, also, App.R. 16(B) (requiring the brief of appellee to conform to the requirements of divisions (A)(1) to (A)(8) of App.R. 16). The city also failed to comply with App.R. 16(A)(3) and (4), which require a brief to recap the assignments of error and the issues presented. We also note that the city's arguments in its brief are not arranged or divided so as to distinguish between the two subassignments of error set forth by appellant, which have different rationales and require different analyses. That said, we shall now proceed with our review.

## UNEMPLOYMENT LAW

{¶ 11} Unemployment compensation is payable to eligible individuals who suffer a loss of remuneration due to involuntary total or partial unemployment. R.C. 4141.29. However, no individual may be paid benefits if he has quit without just cause or if he has been discharged for just cause in connection with the individual's work. R.C. 4141.29(D)(2)(a).

{¶ 12} At the hearing before the commission, there is no burden of proof on the claimant or the employer, as is required in courts of law. R.C. 4141.281(C)(2). Cf. *Irvine v. Unemployment Comp. Bd. of Rev.* (1985), 19 Ohio St.3d 15, 16, 19 OBR 12, 482 N.E.2d 587 (placing the burden on the employee before the current statute was enacted). At the review level, the commission may affirm, modify, or reverse a hearing officer's decision or remand the decision to the hearing officer for further hearing. R.C. 4141.281(C)(4) and (6).

■ {¶ 13} Upon further appeal, the trial court can reverse a just-cause decision of the commission only when the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence. R.C. 4141.282(H). Our standard of review is the same. See *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.* (1995), 73 Ohio St.3d 694, 696–697, 653 N.E.2d 1207. That is, we must also determine whether the commission's decision was unlawful, unreasonable, or against the manifest weight of the evidence. *Guy v. Steubenville,* 147 Ohio App.3d 142, 2002-Ohio-849, 768 N.E.2d 1243, ¶ 24 (a Seventh District decision).

{¶ 14} None of the reviewing courts can reverse a commission decision as being against the manifest weight of the evidence when there is some evidence in the record to support the commission's decision. *Irvine*, 19 Ohio St.3d at 18, 19 OBR 12, 482 N.E.2d 587. When the commission could have reasonably decided a just-cause issue either way, the courts have no authority to overrule that decision. Id.

{¶ 15} Historically, "just cause" means that which, to an ordinarily intelligent person, is a justifiable reason for doing an act. Id. at 17, 19 OBR 12, 482 N.E.2d 587. Yet there is no bright-line definition or test for "just cause." Id. In considering the definition of "just cause," we are instructed to look to the two main purposes of the Unemployment Compensation Act. Id. The Act is intended to, first, assist unfortunate individuals who become involuntarily unemployed by adverse business and industrial conditions. Id. Second, it is to assist an individual who has worked, is able to work, and is willing to work, but is temporarily without employment through no fault of his own. Id. Thus, it has been said that the Act does not protect employees from themselves. *Tzangas*, 73 Ohio St.3d at 697, 653 N.E.2d 1207.

{¶ 16} A decision on purely factual questions is primarily the province of the commission. *Irvine*, 19 Ohio St.3d at 17, 19 OBR 12, 482 N.E.2d 587. And the determination of just cause depends on the particular facts and circumstances of each case. Id. Still, this does not allow substitution of a totality-of-the-circumstances test for the fault-based analysis required. *Tzangas*, 73 Ohio St.3d at 698, 653 N.E.2d 1207. "Fault on behalf of an employee remains an essential component of a just cause termination." Id. (unsuitability to perform the required work is just cause for discharge).

{¶ 17} The commission's function is to determine whether the employer has been reasonable in finding fault on the part of the employee. See id. The courts cannot reevaluate the facts to determine reasonableness. Rather, the courts must defer to the commission's decision, as long as the decision is not unlawful, unreasonable, or contrary to the manifest weight of the evidence.

{¶ 18} We should also take a moment to distinguish between just cause for discharge in the context of an unemployment case and in other contexts, such as labor-contract or wrongful-discharge lawsuits. See *Guy*, 147 Ohio App.3d at 149, 768 N.E.2d 1243, citing *Youghiogheny & Ohio Coal Co. v. Oszust* (1986), 23 Ohio St.3d 39, 42, 23 OBR 57, 491 N.E.2d 298. That an employer justifiably terminates an employee without incurring liability for wrongful discharge does not theoretically preclude the employee from receiving unemployment compensation. See *Durgan v. Ohio Bur. of Emp. Serv.* (1996), 110 Ohio App.3d 545, 549, 674 N.E.2d 1208 (a Ninth District decision noting that firing for absenteeism due

to illness is not due to fault and is not just cause under the unemployment compensation system). We must now apply this law to the facts of the case before us.

## ASSIGNMENT OF ERROR

{¶ 19} Appellant's sole assignment of error provides:

{¶ 20} "The trial court erred by reversing and vacating the decision of the Ohio Unemployment Compensation Review Commission that found that appellant was discharged without just cause."

{¶ 21} Appellant's brief sets forth one assignment of error encompassing two issues. The first argument under this assignment is that the trial court failed to properly defer to the factual findings of the commission. Although the magistrate stated that he took no issue with the commission's factual findings, appellant contends that the magistrate in fact changed the factual findings by stating that running for city office was prohibited by the mayor. Appellant points to the commission's findings that the alleged policy was not written, was not communicated to all, and was not uniform or established. Appellant also believes that the magistrate blurred the distinction between a wrongful-discharge action and a claim for unemployment compensation, noting that she recognizes that there is no wrongful discharge here.

{¶ 22} To determine whether the trial court's decision can be upheld, we must determine whether the commission's decision, finding that appellant was fired without just cause, was unlawful, unreasonable, or against the manifest weight of the evidence. If the commission's decision was lawful and supported by some evidence, then we must reverse the trial court's decision. The specific issue here is whether the mayor fired the appointed, at-will employee with just cause when, prior to the employee's filing for candidacy, the mayor advised her that he would fire her if she ran for a city office but the mayor did not have either a written policy or a uniform, established, or generally communicated policy to that effect.

{¶ 23} Initially, we take note of the timing factor. In late January or early February, appellant informed the mayor of her intention to run. This was just prior to the filing deadline. Appellant then campaigned for nearly three months without suffering any consequences. Although the mayor had paid for an advertisement in opposition to appellant's campaign, he did not terminate her during this campaigning. He waited until after she won the primary. Although no one raises the issue, one may question how long a threat to fire can last if the employer failed to act on it at the time the offense occurred. The reasonableness of the employer's actions could be categorized as diminishing the more removed it is from the date of the employee's violation of a directive.

{¶ 24} We now return to the main argument here. The mayor stated that he had a policy against city employees running for city office. However, the commission found that there was no policy. There was no written policy, and there otherwise was no indication of any uniform, established policy prohibiting political appointees from running for elected city office. The commission found that although the mayor may have told appellant just prior to her filing that he would terminate her if she ran, this did not establish a policy, as it was not communicated to all appointees working for the mayor. The commission believed that it was unreasonable to impose a restriction against running for city office against only one public employee. Thus, the commission found that appellant was not discharged for just cause for purposes of unemployment compensation.

{¶ 25} Under the particular facts and circumstances of this case, the commission's decision is supported by some evidence. We hold that it is not reasonable for an employer to prohibit this employee alone from running for city office or to terminate her for violating an arbitrarily applied prohibition. We also note that the magistrate found that the mayor supported the incumbent city auditor. One can infer from this that the mayor would not have prohibited appellant from running had he not supported the incumbent, thus further denigrating any argument of an existing and uniform policy.

{¶ 26} This court thus finds that the commission's decision was not unlawful, unreasonable, or against the manifest weight of the evidence. Therefore, we reverse the trial court's decision. We note that our holding is limited to the unique circumstances of this case: no written policy, no generally communicated policy to all mayoral appointees, mere oral prohibition to one employee with mention that the mayor supported the incumbent, and no termination until nearly three months after candidacy was established.

{¶ 27} Appellant's second subassignment deals with her argument that an unclassified employee's exercise of the right to run for public office can never foreclose her entitlement to unemployment compensation. Due to the resolution of appellant's first subassignment in her favor, this broader subassignment need not be addressed.

{¶ 28} Finally, we must address the city's argument that appellant was also terminated due to a piece of campaign literature that the mayor claims politicized the tax office. The mayor suggests that appellant's campaign literature inappropriately characterized her achievements and made the mayor's office look bad by mentioning financial discrepancies that had occurred before the mayor took office.

{¶ 29} As evidence, the city submitted (1) a letter to the editor written by one of Morell's supporters stating that Morell did not put untruths in a campaign

flyer and (2) the mayor's response to the editor. However, a letter from a person who supported appellant's candidacy is not evidence of appellant's actions.

{¶ 30} Moreover, the mayor admits that there were indeed financial discrepancies before he took office and that positive characterization of one's achievements at work is not impermissible (or just cause for firing) merely because one has a boss who can also claim credit for the achievements.

{¶ 31} The commission shall not be reversed for failing to find that just cause was established by the few lines in appellant's campaign literature with which the mayor takes issue. The commission did not find that the campaign literature was part of the reason for firing appellant. According to the mayor, appellant was told she would be fired if she ran for office and that is why she was fired. This court will not second-guess the commission regarding its factual finding as to why the mayor fired appellant. In fact, the magistrate, *whose decision the city supports* and who recommended reversing the commission, specifically stated that her running after being told not to "was the sole causative factor in bringing about her discharge from employment." Thus, this alternative argument presented by the city is overruled. Therefore, appellant's first subassignment in her sole assignment of error is sustained.

{¶ 32} For the foregoing reasons, the judgment of the trial court is hereby reversed, and the commission's decision is reinstated.

Judgment reversed.

WAITE and DEGENARO, JJ., concur.